UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LESTER MILLER, GARY BECHTEL, AND BRENDA SUTTON,<br><br>        Plaintiffs,<br><br>v.<br><br>THE BIBB COUNTY SCHOOL DISTRICT; MACON-BIBB COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; and ELAINE CARR, in her official capacity as Executive Director of the Bibb County Board of Elections and Voter Registration,<br><br>        Defendants. | Civil Action No.:<br>5:12-cv-239-HL |

**BRIEF IN SUPPORT OF DEFENDANT BIBB COUNTY
SCHOOL DISTRICT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Bibb County School District, Defendant herein, and files this its Brief in Support of Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment:

**I. BACKGROUND**

Plaintiffs' Complaint challenges the decision of the Bibb County Board of Elections ("Elections Board") to qualify candidates and conduct elections for the Board of Public Education for Bibb County ("BOE") based on existing election districts despite the fact that the Georgia General Assembly had enacted House Bill 963 ("H.B. 963" or the "Act"), which adopted a revised reapportionment scheme. Plaintiffs also bring this action against the Bibb County School District ("District"), even though the District lacks jurisdiction or authority over the conduct of primary and general elections within Bibb County or the City of Macon. The District is entitled to dismissal of this Complaint or, in the alternative, summary judgment as to all claims for the reason that its

EXHIBIT 2

nominal role in the redistricting process was undertaken in compliance with a reasonably conceived plan for reapportionment and did not result in any deprivation of rights to Plaintiffs.

## II. STANDARD OF REVIEW

To survive dismissal for failure to state a claim, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The facts alleged in a complaint must state a claim for relief that is plausible on its face to avoid dismissal for failure to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

In deciding a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). "If the evidence is merely colorable, or is not significantly probative, summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

## III. STATEMENT OF FACTS

During the 2012 legislative session, the Georgia General Assembly enacted HB 963, which modified the existing election districts from which members of the Board of Public Education for Bibb County ("BOE") had been elected. (District's Statement of Material Facts, ¶ 1 [hereinafter "District's SMF, ¶ __"].) HB 963 was signed by the Governor on April 5, 2012. (District's SMF, ¶ 2.) On April 17, 2012, the District sought preclearance of the Act under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. (District's SMF, ¶ 3.) To correct an error in the initial

2

submission, the District had to submit revised information to the U.S. Department of Justice ("DOJ") on April 30, 2012. (District's SMF, ¶ 4.)

Candidate qualification opened for six of the eight BOE offices on May 23, 2012. (District's SMF, ¶ 5.) The Elections Board permitted candidates to qualify using the existing BOE election districts "due to the fact that the new redistricting plan had not been precleared by the DOJ as of the dates set for candidates to qualify." (District's SMF, ¶ 8.) The DOJ precleared H.B. 963 on June 12, 2012. (District's SMF, ¶ 9.) After receiving notice of preclearance, the Elections Board determined that it was "not feasible to conduct the BOE's general primary elections under the new redistricting plan on July 31, 2012." (District's SMF, ¶ 10.) The Elections Board needs "sufficient time" to ensure that a new voter database can be created before the BOE elections. (District's SMF, ¶ 11.)

## IV. ARGUMENT AND CITATION OF AUTHORITY

**A.  The District Has No Authority to Make Decisions Regarding the BOE Elections and, Therefore, Is Not Liable for Any Alleged Deprivation of Rights**

In order to prevail on a Section 1983 claim, plaintiffs must show that the governmental entity deprived Plaintiffs of a constitutional right under color of state law. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995). There is no *respondeat superior* or vicarious liability under Section 1983. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001). Thus, a governmental entity can only be held liable under Section 1983 for constitutional deprivations that are caused by a governmental policy or custom. Id. Similarly, an individual defendant is only liable if there is a causal connection between the defendant's unlawful actions and the alleged deprivation. Dixon v. Burke Cnty., 303 F.3d 1271, 1275 (11th Cir. 2002)("[w]ithout causation, [a] § 1983 case fails as a matter of law"). Plaintiffs must show the District caused the alleged deprivation of their rights. Plaintiffs' Complaint fails to identify a single District official who has violated the

3

Constitution and there is no evidence from which a trier of fact could reasonably infer that the District played any role in the alleged deprivation.

Plaintiffs' Complaint primarily challenges the actions of the Elections Board: (1) to permit candidate qualifying using existing election districts prior to preclearance of H.B. 963; and (2) not to halt the election process upon receipt of preclearance, even though qualifying had already closed. (Compl., ¶¶ 26, 27.) Their sole allegation against the District relates to the fact that the District amended its initial preclearance submission to correct an inadvertent error. (Compl., ¶¶ 23-24, 40-41.) Plaintiff's do not allege (nor could they prove) that the District had any other role in the implementation of H.B. 963. As a matter of law, the District has no authority to take any action related to the implementation of H.B. 963 sufficient to give rise to a deprivation of rights.

The District is governed by the BOE, an entity without authority to redistrict itself. Ga. L. 1872, p. 388; Ga. Const. Art. VIII, Sec. V, Para. I (1983). The Georgia General Assembly is the only legislative body with the power to enact redistricting legislation. Ga. Const. Art. IX, Sec. II, Para. 1 (c); <u>Smith v. Cobb County Bd. of Elections & Registrations</u>, 314 F. Supp. 2d 1274, 1290 (N.D. Ga. 2002). Thus, the General Assembly dictates the election district lines, not the District or the BOE.

Neither the BOE, nor the School District under its management and control, is authorized to exercise those powers and duties that have been delegated to the Elections Board. (District's SMF, ¶¶ 6-7.) The Act establishing the Elections Board, approved April 23, 1969, confers upon the Elections Board "jurisdiction over the registration of voters and the conduct of primaries and elections for the County of Bibb and the City of Macon in accordance with the Act." Ga. L. 1969, p. 3332. The Elections Board acts as the superintendent of elections (formerly ordinary) under the Georgia Election Code, O.C.G.A. § 21-2-1 <u>et seq</u>, and exercises those powers and duties enumerated in O.C.G.A. § 21-2-70. The District cannot and does not play any role in the process of qualifying

candidates or conducting general and primary elections within Bibb County. (District's SMF, ¶¶ 6-7.) The District has no legal authority to determine which election districts will be used for qualifying or how to proceed in the event redistricting legislation is precleared after the election process is well underway. The Election Board dictates the election process from the qualification of candidates through the certification of election results, not the District.

Plaintiffs' claims against the District are predicated on the single, conclusory allegation that the District failed to "timely submit H.B. 963 for preclearance." (Compl., ¶ 40.) Plaintiffs do not allege that this error was caused by any policy or custom or otherwise identify any facts that would support such an inference. (Compl., ¶¶ 23-24.) There is also no evidence to support Plaintiffs' wildly speculative allegation that the District's supplemental submission delayed preclearance of H.B. 963. (Compl., ¶ 41).

H.B. 963 governs the timeliness of the BOE's preclearance submission. (Compl., ¶ 21, Ex. B.) It provides, "[t]he Board of Education of Bibb County shall through its legal counsel submit this Act for preclearance pursuant to Section 5 of the federal Voting Rights Act of 1965, as amended, within 30 days after the date on which this Act is approved by the Governor or otherwise becomes law without such approval." (Compl., ¶ 21, Ex. B.) Both the initial request for preclearance and the April 30, 2012 amendment to that request, were submitted well before the expiration of the 30-day time period. (District's SMF, ¶¶ 1, 3-4.) The District's submission was timely as a matter of law and, consequently, any possible factual dispute regarding a delay in that process is immaterial.

Nonetheless, a review of the preclearance process further illustrates the lack of merit of Plaintiffs' claims against the District. The U.S. Department of Justice has 60 days to review preclearance submissions. 28 C.F.R. § 51.9. H.B. 963 was signed into law a mere 48 days prior to the opening of the candidate qualification period. (District's SMF, ¶¶ 2, 5.) Despite these impossible

timelines, H.B. 963 afforded the District a generous 30 days to make the required preclearance submission and failed to include any contingency provisions directing the Elections Board how to proceed in the inevitable event that H.B. 963 was not precleared in advance of qualifying. (Compl., ¶ 21, Ex. B.) The preclearance submission of H.B. 963 was not even required until May 5, 2012, leaving 17 days for the DOJ to conduct its 60-day review and no time for the Elections Board to repopulate its voter database after receiving notice of preclearance. (Compl., ¶ 21, Ex. B; District's SMF, ¶ 2.) It is against this backdrop that Plaintiffs attempt to establish a causal connection between the District's role in the preclearance process and the alleged deprivation of Plaintiffs' constitutional rights.

The District submitted H.B. 963 for preclearance 12 days after its enactment, well before the legislatively imposed deadline. (District's SMF, ¶ 3.) The DOJ granted preclearance within 54 days of its receipt the preclearance submission. (District's SMF, ¶ 9.) Although the DOJ's 60-day time period for the review of preclearance submissions recommences upon receipt of supplemental information, the DOJ's review did not extend more than 60 days beyond the date of the District's initial submission even though the District submitted supplemental information. *See* 28 C.F.R. § 51.9 (b).

Plaintiffs claim they are aggrieved by the decision to permit candidates to qualify under existing BOE election districts, even prior to preclearance of H.B. 963, and the decision not to halt an election process that was well underway once H.B. 963 had been precleared. (Compl., ¶¶ 26-27, 40-41.) Those decisions fall within the purview of the Elections Board -- the only defendant in this action with the authority to make such decisions and afford Plaintiffs the remedy they seek. The Elections Board permitted candidates to qualify under the existing BOE election districts. (District's SMF, ¶ 8.) The Elections Board made this decision "due to the fact that the new redistricting plan

had not been precleared by the DOJ as of the dates set for candidates to qualify." (District's SMF, ¶ 8.) After receiving notice that H.B. 963 had been precleared, the Elections Board determined it was "not feasible to conduct the BOE's general primary elections under the new redistricting plan on July 31, 2012." (District's SMF, ¶ 10.) Apparently, the Elections Board did not believe it had sufficient time to create a new voter database prior to the July 31, 2012 elections. (District's SMF, ¶ 11.) The District has no legal authority to make the challenged decisions or to afford Plaintiffs any relief and, therefore, Plaintiffs cannot establish any causal connection between the District's policies and customs and any alleged violation of Plaintiffs' rights.

**B.     The District Submitted H.B. 963 for Preclearance in Accordance with a Reasonably Conceived Plan for Reapportionment**

The Equal Protection Clause provides "discoverable and manageable standards" in determining the constitutionality of a state legislative reapportionment scheme. Baker v. Carr, 369 U.S.186, 226 (1962). The Supreme Court articulated those standards in Reynolds v. Sims, 377 U.S. 533 (1964). Reynolds requires that representatives to an elected body be drawn from voting districts of substantially equal population. Reynolds, 377 U.S. at 568 ("We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis"). This guarantee also extends to local units of administration. See Avery v. Midland Cnty., 390 U.S. 474, 484-85 (1968).[1]

---

[1] There appears to be no principled reason to depart from Reynolds when evaluating claims under the Voting Rights Act. See Ramos v. Illinois, 781 F. Supp. 1353, 1356 (1991); Graves v. City of Montgomery, 807 F. Supp. 2d 1096, 1113 (M.D. Ala. 2011). In addition, the "equal protection" provisions of the Georgia Constitution, though phrased differently than those set forth in the Equal Protection Clause of the Fourteenth Amendment, are substantially the same. McDaniel v. Thomas, 248 Ga. 632, 285 S.E.2d 156 (1981). Accordingly, Plaintiffs' claims under the Equal Protection Clause of the Fourteenth Amendment, the Georgia Constitution, and Voting Rights Act are treated as one.

Reynolds does not require immediate redistricting upon receipt of federal decennial census data. Rather, to pass constitutional muster there must be a "reasonably conceived plan for periodic adjustment of legislative representation." Reynolds, 377 U.S. at 583. The Supreme Court, in Reynolds, recognized that there may arise circumstances where implementation of a required reapportionment scheme might be impracticable. In Reynolds, the Court held,

> [h]owever, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative reapportionment case, even though the existing apportionment scheme was found invalid. Id. at 585.

There is no dispute that the redistricting of the BOE election districts was a constitutional imperative. The issue in this action is whether the Constitution required that the entire redistricting process be completed prior to the July 31, 2012 election without any consideration of the fact that H.B. 963 was not precleared until after the candidate qualification period had already closed and, presumably, candidates had already begun their election campaigns within existing districts.

Again, the District's only role in the BOE redistricting process related to the submission of H.B. 963 for preclearance. Because the District was complying with a reasonably conceived plan that resulted in decennial reapportionment, the District satisfied the "minimal requirements for maintaining a reasonably current scheme of legislative representation" under Reynolds. See Reynolds, 377 U.S. at 583-84. This is true even though H.B. 963 was not implemented prior to the opening of the candidate qualification period and, absent judicial intervention, would not have been implemented prior to the general primary elections. See, e.g., Wells v. Rockefeller, 394 U.S. 542, 547 (1969)(where the primary election was only three months away, the Court held "we cannot say that there was error in permitting the 1968 election to proceed under the plan despite its constitutional infirmities"); Klahr v. Williams, 313 F. Supp. 148, 152 (D. Ariz. 1970), aff'd sub

8

nom., Ely v. Klahr, 403 U.S. 108 (1971)(allowing elections to be held under the old plan where nominating petitions had already been circulated and had to be filed within seven weeks); Ramos v. Illinois, 781 F. Supp. 1353, (E.D. Ill. 1991); Graves v. City of Montgomery, 807 F. Supp. 2d 1096 (M.D. Ala. 2011). Thus, the inability to implement a redistricting plan prior to an impending election does result in a *per se* violation the Equal Protection Clause or the Voting Rights Act. There must be evidence establishing either that the plan was not reasonably conceived or that there was non-compliance with that plan. Plaintiffs can prove neither and, as a matter, of law, Plaintiffs' action against the District cannot be maintained.

## V.  CONCLUSION

For these reasons, and based on the authority cited herein, Defendant Bibb County School District's Motion to Dismiss should be granted.

**HALL BOOTH SMITH & SLOVER, P.C.**

*/s/ Patrick N. Millsap*
Patrick N. Millsap
Georgia Bar No. 509888

CAMILLA
P.O. Box 856
Two West Broad Street
Camilla, Georgia 31730
pmillsap@hbss.net

*/s/ Kenneth D. Jones*
Kenneth D. Jones
Georgia Bar No. 402101

ATLANTA
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303
kjones@hbss.net

*/s/ Andrea L. Jolliffe*
Andrea L. Jolliffe
Georgia Bar No. 176556
*Attorneys for Defendants*

ATHENS
440 College Avenue, North
Suite 120
Athens, Georgia 30601
ajolliffe@hbss.net

10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LESTER MILLER, GARY BECHTEL, AND BRENDA SUTTON,<br><br>        Plaintiffs,<br><br>v.<br><br>THE BIBB COUNTY SCHOOL DISTRICT; MACON-BIBB COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; and ELAINE CARR, in her official capacity as Executive Director of the Bibb County Board of Elections and Voter Registration,<br><br>        Defendants. | Civil Action No.:<br>3:12-cv-329-HL |

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2012, I electronically filed the foregoing **Brief in Support of Defendant Bibb County School District's Motion To Dismiss or, in the Alternative, Motion for Summary Judgment** with the Clerk of the Court using the CM\ECF system which will send e-mail notification of such filing to the following:

A. Lee Parks & David F. Walbert  
PARKS, CHESIN & WALBERT, P.C.  
75 Fourteenth Street, 26th Floor  
Atlanta, GA 30309

Charles E. Cox, Jr.  
3464 Vineville Avenue  
Macon, GA 31202

**HALL BOOTH SMITH & SLOVER, P.C.**

*/s/ Patrick N. Millsap*  
Patrick N. Millsap  
Georgia Bar No. 509888

CAMILLA  
P.O. Box 856  
Two West Broad Street  
Camilla, Georgia 31730  
pmillsap@hbss.net

ATLANTA
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303
kjones@hbss.net

ATHENS
440 College Avenue, North
Suite 120
Athens, Georgia 30601
ajolliffe@hbss.net

*/s/ Kenneth D. Jones*
Kenneth D. Jones
Georgia Bar No. 402101

*/s/ Andrea L. Jolliffe*
Andrea L. Jolliffe
Georgia Bar No. 176556
*Attorneys for Defendants*