UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LESTER MILLER, GARY BECHTEL, AND BRENDA SUTTON,<br><br>Plaintiffs,<br><br>v.<br><br>THE BIBB COUNTY SCHOOL DISTRICT; MACON-BIBB COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; and ELAINE CARR, in her official capacity as Executive Director of the Bibb County Board of Elections and Voter Registration,<br><br>Defendants. | Civil Action No.:<br>5:12-CV-239-HL |

**DEFENDANT BIBB COUNTY SCHOOL DISTRICT'S REPLY
TO PLAINTIFF'S BRIEF IN OPPOSITION TO BIBB COUNTY SCHOOL DISTRICT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND
DEFENDANTS MACON-BIBB COUNTY BOARD OF ELECTIONS AND VOTER
REGISTRATION AND ELAINE CARR'S RESPONSE IN OPPOSITION TO
DEFENDANT BIBB COUNTY SCHOOL DISTRICT'S MOTION TO DISMISS OR, IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

**I.  The District's Failure to Oppose a Court Order Implementing H.B. 963 Does Not Preclude the District from Seeking Dismissal from this Action**

Cognizant of the fact that H.B. 963 had been precleared by the U.S. Department of Justice ("DOJ") after the candidate qualification period had closed but just weeks prior to the start of advance voting on July 7, 2012, the District decided not to impede the expeditious resolution of a matter of great public interest by filing a Motion to Dismiss or otherwise opposing the issuance of an Order governing Board of Education ("BOE") elections.  The District understands the Consent Order was intended to facilitate implementation of newly precleared redistricting legislation by directing the conduct of the Elections Board.  Given the urgency of the matter that was before this Court, public policy considerations should weigh heavily against penalizing the District for

respecting the need for unimpeded judicial intervention where, as here, existing voting districts had become malapportioned by virtue of a decennial census and redistricting legislation intended to remedy such malapportionment was precleared in advance of the elections but after qualifying had already occurred.

It is for these reasons -- and no others -- that the District did not oppose the issuance of the June 29, 2012 or July 13, 2012 Orders of this Court. Neither of the Orders materially alter the District's legal relationship with Plaintiffs nor do they require the District to modify its behavior in any way that directly benefits Plaintiffs. This Court did not, for example, order the District to seek preclearance of a redistricting legislation based on its failure to do so. Compare LULAC of Tex. v. Tex. Democratic Party, 428 Fed. Appx. 460, 464 (5th Cir. 2011). Instead, the Court's Orders addressed issues related to the qualifying of candidates, the scheduling of primary elections, the construction of voter data bases, and the refunding of qualifying fees.

As a matter of state law, the District has no authority over such matters. Responsibility for "the conduct of primaries and elections for the County of Bibb and the City of Macon," have been legislatively delegated to the Elections Board. See Ga. L. 1969, p. 3332; see also Kinman v. Monk, 179 Ga. 132, 135 (1934)("[I]t is for the political power of the State, within the limits of the constitution, to provide for the manner in which elections shall be held.") Without specific legislative authorization, the Elections Board cannot abrogate its authority to others. Cf. Chatham Ass'n of Educators v. Bd. of Pub. Educ., 231 Ga. 806 (1974)(holding that a board of education cannot delegate its power to teachers association); Gartrell v. McGahee, 216 Ga. 125, 128 (1960) (holding that a public welfare department cannot delegate its powers to others). Here, the District was not registering voters, qualifying candidates, constructing voter databases, or conducting voter elections. Thus, the Orders of this Court had no bearing on the District's conduct.

According to Fed. R. Civ. Pro. 21, "the Court may at any time, on just terms, add or drop a party." Courts have declared misjoinder where a particular defendant lacks authority to provide the requested relief, where a defendant has no discernable legal obligation to provide the requested relief, or where a defendant's presence is not necessary to afford all the requested relief. Brooks v. Glynn County, 1989 U.S. Dist. LEXIS 4776, **7-8 (S.D. Ga. 1989)(granting local defendants motion to dismiss in a challenge to state-wide election practices). The fact that this Court has issued two Orders directing the conduct of the Elections Board does not prevent the District from seeking dismissal.

## II. The Matter of Attorney's Fees Remains as a Live Controversy

As both the Plaintiffs and the Elections Board emphasize in their responsive pleadings, the issue of attorney's fees looms large as an unresolved matter. Certainly, the matter of attorney's fees presents a live controversy with respect to which this Court may grant meaningful relief. Simply because the District did not oppose this Court's exercise of authority over the conduct of elections by the Elections Board does not now preclude the District from seeking dismissal from this action. Curiously, the Elections Board argues that the District "offers no arguments as to why they should not be held liable for payment of such [attorney's] fees." (Elections Board Brief, p. 4.) Those arguments form the very basis for the District's pending Motion to Dismiss.

Congress has authorized the award of attorney's fees to the "prevailing party" under the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973*l* (e), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (b). "Once civil litigation materially alters the legal relationship between the parties, the degree of plaintiffs overall success goes to the reasonableness of a fee award." Farrar v. Hobby, 506 U.S. 103, 114 (1992)(internal citation and quotation omitted).

"No material alteration of the legal relationship exists until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement *against the defendant*." Id. at 113 (emphasis added).

In this action, there is no consent decree for the Plaintiffs to enforce *against the District*. Neither the June 29, 2012 nor the July 13, 2012 Orders direct the conduct of the District in any respect. The relief Plaintiffs sought -- an injunction blocking the use of malapportioned voting districts -- was afforded in full without requiring any action on the part of the District. The Plaintiffs have failed to articulate any way in which the District's participation was necessary to afford full relief. Thus, the Plaintiffs are not a prevailing party as to the District, and there are no facts from which this Court could infer that the District's actions -- as opposed to an intervening census and the timing of the election cycle or the actions of the Election Board -- gave rise to the need for judicial intervention.

### III. Implementation Prior to Preclearance Cannot be Decided by the District and Any Factual Dispute Regarding Alleged Directives to the Election Board are Immaterial

The District is compelled to direct this Court to the authority we assume would be well known to both the Elections Board and any self-proclaimed "very experienced voting rights litigators": Prior to preclearance of H.B. 963, only a three-judge panel of this Court could have approved an interim redistricting plan to remedy the fact that H.B. 963 had not been precleared in advance of the candidate qualification period. See Perry v. Perez, 132 S. Ct. 934, 940-941 (2012)(holding where newly enacted plans would not be precleared in time for 2012 elections and the old lines could not be used because of population growth, "[i]t thus fell to the District Court in Texas to devise interim plans for the State's 2012 primaries and elections."); United States v. Cohen, 470 F.2d 503, 505 (5th Cir. 1972)("The matter we review is of purely local concern, but the case deals with a specific statute, the Voting Rights Act of 1965, section 5 thereof, 42 U.S.C. § 1973c,

which applies not only to action by the state but also action by any 'political subdividision' of the state, and requires a three-judge court for 'any action under this section.'"[1]

Under Section 5's implementing regulations, "[i]t is unlawful to enforce a change affecting voting without obtaining preclearance under Section 5." 28 C.F.R. § 51.10. The Supreme Court has "been emphatic that a new electoral map cannot be used to conduct an election until it has been precleared." Perry, 132 S. Ct. at 940. If a voting change subject to Section 5 has not been precleared, Section 5 plaintiffs are entitled to an injunction prohibiting implementation of the change. Id. In fact, on at least two occasions, the Supreme Court has reversed lower federal courts for allowing elections to proceed under non-precleared plans. See Clark v. Roemer, 500 U.S. 646, 652-53 (1991); Lopez v. Monterey County, 519 U.S. 9 (1996). Thus, any decision to implement H.B. 963 prior to preclearance would have been a decision to violate federal law. See also Texas v. United States, 2012 U.S. Dist. LEXIS 121685, *5 (D.D.C. 2012).

Both the Plaintiffs and the Elections Board have identified a factual dispute that is of absolutely no consequence. Alleged conversations between Election Board officials and counsel for the District are wholly immaterial and do not give rise to a genuine issue of material fact that would preclude dismissing the District from this action. The issue of whether candidates may qualify and run for office under redistricting legislation prior to the preclearance of such legislation is governed by federal law. It is not a matter to be determined by the District, despite any misguided beliefs of Election Board officials to the contrary.

---

[1] The District assumes knowledge of such authority was implied in the Elections Board Verified Answer, which states that the Elections Board "permitted candidates to qualify using the previous redistricting plan due to the fact that the new redistricting plan had not been precleared by the DOJ as of the dates set for candidates to qualify" and "are unsure what actions they can take regarding postponement of the July 31, 2012 general primary elections without an appropriate order of this Court." (Elections Board Answer, ¶¶ 26, 28.)

5

Where a newly enacted redistricting plan has not received preclearance, the remedy is not to move forward without regard for the preclearance process.[2] As the Supreme Court recently held,

> The failure of a State's newly enacted plan to gain preclearance prior to an upcoming election does not, by itself, require a court to take up the State's legislative task. That is because, in most circumstances, the State's last enacted plan simply remains in effect until the new plan receives preclearance. But if an intervening event -- most commonly, as here, a census, renders the current plan unusable, a court must undertake the "unwelcome obligation" of creating an interim plan. Perry, 132 S. Ct. at 940 (internal citations omitted).

As a matter of federal law, the District could not have "authorized" the use of H.B. 963 prior to preclearance. Even this Court could not have "adopted an unprecleared plan as its own." Id. at 942 (citing Lopez, 519 U.S. 9; McDaniel v. Sanchez, 452 U.S. 130 (1981)). To remedy the situation in which preclearance does not occur in advance of qualifying, this Court could only draft an interim plan with due regard for the policy judgments reflected in H.B. 963. Id. at 941.

Given the mandates of Section 5, it is immaterial whether the Elections Board used the existing BOE lines for the reason stated in their Verified Answer or for the reason put forth in the Affidavit of Elaine Carr. As a matter of law, H.B. 963 was unenforceable prior to June 12, 2012 when it was precleared by the DOJ. Id. at 941. Thus, there is no need to conduct discovery regarding the various factors that may have influenced the Election Board's ultimate decision to comply with Section 5 at the time of qualifying. At bottom, Plaintiffs complaint is predicated on the allegation that counsel for the District directed the Elections Board to comply with federal law.

**IV.    The District Discharged its Duty to Submit H.B. 963 for Preclearance and there is No Legal Basis for Reallocating Education Funds to Pay Plaintiffs' Attorney's Fees**

---

[2] "Prior to section 5's enactment, states could stay ahead of plaintiffs and courts by passing new discriminatory voting laws as soon as the old ones had been struck down. But section 5 shifted the advantage of time and inertial from the perpetrators of the evil to its victim. It did so by placing the burden on covered jurisdictions to show their voting changes are nondiscriminatory *before* those changes can be put in effect. Section 5 thus preempted the most powerful tools of black disenfranchisement, resulting in undeniable improvements in the protection of minority voting rights." Shelby County v. Holder, 679 F.3d 848, 854 (D.C. Cir. 2012)(internal citations and quotations omitted; emphasis in original).

The vote dilution cases upon which Plaintiffs rely to justify their action against the District are inapposite. This is not an action challenging the constitutionality of redistricting legislation, whether maintained over time or recently enacted. As concerns the District, the only issue for determination is whether the District discharged its duty to submit H.B. 963 for preclearance. Although legislation of local applicability may be submitted either by a State or its political subdivisions, "the State is better able to explain to the Attorney General the purpose and effect of voting changes it enacts than are the individual covered jurisdictions." 28 C.F.R. § 51.23 (a). It might also be said the State is better able to communicate any changes that were made to a locally developed redistricting plan to avoid any confusion regarding the submission of corresponding maps. Regardless, the State elected not to submit H.B. 963 for preclearance and, instead, directed the District to do so. The plain language of H.B. 963 governs both the means by which the District was to seek preclearance and the timeline for making such submission. The District was directed to seek administrative, as opposed to judicial preclearance, "within 30 days after the date on which [H.B. 963] is approved by the Governor or otherwise becomes law without such approval."[3] (Compl., ¶ 21, Ex. B.)

Although Plaintiffs dispute the precise date of the District's preclearance submission, there is no dispute the submission was made on or before the date it was received by the DOJ. (Pl.s' Response to the District's SMF, ¶ 9.) Even assuming the District had submitted H.B. 963 for preclearance on March 29, 2012 and no supplemental submissions were necessary, there would still have been less than 60 days before the opening of qualifying on May 24, 2012 in which to obtain

---

[3] DOJ implementing regulations contemplate that a submitting authority may either seek administrative preclearance from the Attorney General or may obtain judicial preclearance by filing a declaratory judgment action in the District Court for the District of Columbia. 42 U.S.C. § 1973c; 28 C.F.R. §§ 51.10 (a) & (b). The District, however, was precluded from seeking judicial preclearance by virtue of the plain language of H.B. 963.

7

preclearance. In addition, the Elections Board represented to the District that it was required to finalize local district lines in the State of Georgia Voter Registration System by May 15, 2012. As Defendant Carr wrote, the May 15, 2012 deadline "was required so that our election data bases are built and absentee ballots are available for UOCAVA voters by June 15, 2012." (Pls. Response, p. 13, Ex. 3, ¶ 3, Ex. A.) This timeframe is consistent with the Elections Board's representations to this Court that it needs approximately 40 days, calculated from June 29, 2012 to August 9, 2012, to "construct and deliver the necessary voting data bases." (June 29, 2012 Order, p. 5.) Counting backwards from the March 29, 2012 date, this would leave the DOJ with only 47 days to grant preclearance.

Contrary to the assertions of Plaintiffs and the Elections Board, the District is only required to submit H.B. 963 for preclearance. It was not legally obligated to guarantee preclearance "in time for the 2012 primary election." (Plaintiffs' Response, p. 10; Election Boards' Response, p.7.) As is evident from the parties' responsive pleadings, there is a complete absence of any legal authority for such an assertion. Even where a submitting authority requests expedited consideration, there is no guarantee that the DOJ will complete its review in time to meet critical election deadlines. See Ariz. Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n, 366 F. Supp. 2d 887, 891 (D. Ariz. 2005). The DOJ has 60 days to preclear or object to redistricting legislation. See 28 C.F.R. §§ 51.9 (a) & (b). If the submission is incomplete or if the DOJ requires additional information, the 60-day clock will begin anew once the DOJ receives the further information. Ariz. Minority, 366 F. Supp. at 891.

If H.B. 963 had been silent as to a timeline for submission, the District would not have been without a governing standard. The timeliness of the submission would be judged on the basis of Voting Rights Act jurisprudence. See, e.g., Lopez, 519 U.S. at 24 ("The goal of a three-judge district

8

court facing a § 5 challenge must be to ensure that the covered jurisdiction submits its election plan to the appropriate federal authorities for preclearance as expeditiously as possible.") H.B. 963 was not silent, however. It provided the District with a 30-day deadline for making the submission. Assuming all facts in favor of Plaintiffs, all that can be said is that it took the District 20 days to make its initial submission, as calculated from March 29, 2012 to April 18, 2012.[4]

The District did not enact the redistricting legislation it was directed to submit for preclearance, and it did not establish the timeframe for such submission. It simply complied with the State's directive to submit H.B. 963 for preclearance within 30 days after the date it was approved by the Governor. To the extent Plaintiff seeks to challenge those directives as insufficient for purposes of ensuring compliance with the Voting Rights Act, Plaintiffs have failed to name a proper party.

For these reasons, and based on the authority cited herein, Defendant Bibb County School District's Motion to Dismiss should be granted.

Respectfully submitted this 20th day of September, 2012.

**HALL BOOTH SMITH, P.C.**

*/s/ Patrick N. Millsaps*
Patrick N. Millsaps
Georgia Bar No. 509888

CAMILLA
P.O. Box 856
Two West Broad Street
Camilla, Georgia 31730
pmillsaps@hallboothsmith.com

---

[4] The timelines should actually be calculated from April 5, 2012 to April 17, 2012. However, any dispute about those dates is immaterial for purposes of ruling on the District's Motion to Dismiss. As Plaintiffs' are entitled to the benefit of all factual inferences, the District relies on the March 29, 2012 and April 18, 2012 dates for purposes of establishing the timing of relevant events. Were this Court so inclined to take judicial notice of the date of enactment of H.B. 963, there would be no basis to hold the District to the March 29, 2012 date, as federal regulations provide that, with the exception of a change requiring approval by referendum, the Attorney General will not consider the merits of any proposal for a change submitted prior to final enactment. 28 C.F.R. §§ 51.22, 51.27 (a).

|  |  |
|---|---|
| | */s/ Kenneth D. Jones*  <br>Kenneth D. Jones  <br>Georgia Bar No. 402101 |
| ATLANTA  <br>191 Peachtree Street NE  <br>Suite 2900  <br>Atlanta, Georgia 30303  <br>kjones@hallboothsmith.com | |
| | */s/ Andrea L. Jolliffe*  <br>Andrea L. Jolliffe  <br>Georgia Bar No. 176556  <br>*Attorneys for Defendants* |
| ATHENS  <br>440 College Avenue, North  <br>Suite 120  <br>Athens, Georgia 30601  <br>ajolliffe@hallbothsmith.com | |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LESTER MILLER, GARY BECHTEL, AND BRENDA SUTTON,<br><br>  Plaintiffs,<br><br>v.<br><br>THE BIBB COUNTY SCHOOL DISTRICT; MACON-BIBB COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; and ELAINE CARR, in her official capacity as Executive Director of the Bibb County Board of Elections and Voter Registration,<br><br>  Defendants. | Civil Action No.:<br>5:12-cv-329-HL |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2012, I electronically filed the foregoing **Defendant Bibb County School District's Reply to Plaintiff's Brief in Opposition to Bibb County School District's Motion to Dismiss or for Summary Judgment and Defendants Macon-Bibb County Board of Elections and Voter Registration and Elaine Carr's Response in Opposition to Defendant Bibb County School District's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment** with the Clerk of the Court using the CM\ECF system which will send e-mail notification of such filing to the following:

| | |
|---|---|
| A. Lee Parks & David F. Walbert<br>PARKS, CHESIN & WALBERT, P.C.<br>75 Fourteenth Street, 26th Floor<br>Atlanta, GA 30309 | Charles E. Cox, Jr.<br>3464 Vineville Avenue<br>Macon, GA 31202 |

**HALL BOOTH SMITH, P.C.**

*/s/ Patrick N. Millsaps*
Patrick N. Millsaps
Georgia Bar No. 509888

11

CAMILLA
P.O. Box 856
Two West Broad Street
Camilla, Georgia 31730
pmillsaps@hallboothsmith.net

        */s/ Kenneth D. Jones*
        Kenneth D. Jones
        Georgia Bar No. 402101

ATLANTA
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303
kjones@hallboothsmith.net

        */s/ Andrea L. Jolliffe*
        Andrea L. Jolliffe
        Georgia Bar No. 176556
        *Attorneys for Defendants*

ATHENS
440 College Avenue, North
Suite 120
Athens, Georgia 30601
ajolliffe@hallboothsmith.net